IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIEMENS INDUSTRY, INC., | ) | |
| | ) | Civil Action No. 2:17-cv-00405 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARRY C. NAGEL | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff Siemens Industry, Inc. ("Siemens"), by and through its undersigned counsel, files the following Amended Complaint ("Complaint") against Defendant Harry C. Nagel ("Defendant" or "Nagel"), respectfully submitting as follows:

### I.   NATURE OF THIS ACTION

1.      Nagel, a former Senior General Manager at Siemens, voluntarily resigned from his employment with Siemens effective April 3, 2015.  Following his resignation, Nagel entered into a Confidential Settlement Agreement, Waiver, and Release of Claims ("Settlement Agreement") with Siemens, which included his representation that he had not removed or retained in any form any confidential information of Siemens.  (A true and correct copy of the Settlement Agreement is attached as Exhibit A.)  Siemens has since learned that Nagel's representation was false and that Nagel knew it was false at the time he entered into the Settlement Agreement.  Indeed, Nagel has admitted that during the course of his employment with Siemens, he downloaded and/or copied thousands of emails and other confidential documents belonging to Siemens, and that, following his resignation, and at the time of and after

entering into the Settlement Agreement with Siemens, Nagel continued to retain said documents, in direct violation of his contractual and common law obligations.

2.      By this action, Siemens seeks to recover damages suffered as a result of Nagel's unlawful conduct.

## II.  PARTIES

3.      Siemens is a Delaware corporation with a principal place of business located at 3333 Old Milton  Parkway, Alpharetta, Georgia 30005

4.      Nagel is an adult individual and resident of Allegheny County, Pennsylvania.

## III.  JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that Siemens and Nagel are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that Nagel resides in this judicial district and a substantial part of the events giving rise to the claims in this action took place in this judicial district.

## IV.  FACTUAL BACKGROUND

7.      Prior to May 9, 2012, Nagel was one of two co-owners of PHW, Inc. ("PHW"), a Pennsylvania corporation engaged in the business of manufacturing electronic train control and signaling systems.

8.      On May 9, 2012, Invensys Rail Corporation ("Invensys") purchased all of the shares of PHW from Nagel and John Harrison ("Harrison") pursuant to a Stock Purchase Agreement ("SPA").  (A true and correct copy of the SPA is attached hereto as Exhibit B).

9.      As consideration for the sale of PHW, Invensys paid Nagel and Harrison an initial payment in the amount of seventeen million dollars ($17,000,000).  (*See* Exhibit B, Section 2.2 at 12).

10.      Under the terms of the SPA, Nagel and Harrison were also eligible to receive additional "Contingent Consideration," if during the relevant Measurement Periods:

a.      Nagel and Harrison remained employed with the Company until the last day of the relevant Measurement Period, or were terminated as a result of death, Disability, Good Reason, or for other than Cause (each as defined in the applicable employment agreement); and

b.      The PHW business unit achieved certain financial targets during each of the annual Measurement Periods.

(*See* Exhibit B, Section 2.4 at 14-15).

11.      Pursuant to the SPA, the relevant Measurement Periods for Nagel spanned three years ending on March 31, 2013, March 31, 2014, and March 31, 2015.  (*See* Exhibit B, Section 2.4 at 14-15).

12.      In connection with the SPA, Nagel entered into an employment agreement with Invensys pursuant to which he agreed to be employed as Senior General Manager of the PHW business unit.

13.      On or about May 2, 2013, Siemens acquired Invensys, including the PHW business unit, and assumed the SPA and Nagel's employment agreement.

14.      On or about April 3, 2015, three days after the close of the third and final Measurement Period, Nagel resigned from his employment with Siemens.

A.      **The Settlement Agreement**

15.      Between April 2015 and December 2015, Siemens and Nagel had communications regarding both the calculation and payment of Contingent Consideration to Nagel for the final Measurement Period.

16.      Nagel and Siemens did not agree on the terms and conditions for the Contingent Consideration to be paid to Nagel, and Nagel threatened suit.

17.      Ultimately, Siemens and Nagel agreed to resolve their dispute, with Siemens agreeing to pay Nagel a final Contingent Consideration payment in the amount of $950,000, in exchange for Nagel agreeing to release any and all rights and claims under the SPA.

18.       From approximately November 17, 2015 through December 9, 2015, Siemens and Nagel negotiated the terms of their settlement, to be memorialized in a settlement agreement.

19.      During the course of these negotiations, Nagel represented to Siemens that he had not removed or retained any Siemens information or documents other than some older, duplicate files that predated the sale of PHW to Invensys.

20.      This was a material term of the parties' agreement to resolve their dispute, and was a term that Siemens insisted be included in the Settlement Agreement.

21.      On December 9, 2015, Nagel executed the Settlement Agreement, agreeing to its terms.

22.      By the terms of the Settlement Agreement, Nagel represented and agreed that he had not

> removed from [Siemens] or Invensys Rail Corporation or retained in any form, including electronic form, any original or duplicated confidential information of [Siemens] or Invensys Rail Corporation or any modified or extracted version thereof; except for your personal copies of information related to PHW, Inc. which (1) predated the Stock Purchase Agreement; (2) originals or copies of which were included in the records of PHW as of

the consummation of the Stock Purchase Agreement; and (3) which shall remain subject to your confidentiality obligations hereunder or otherwise existing.

(*See* Exhibit A, Section 4).

23.     Pursuant to the Settlement Agreement, Siemens agreed that:

In consideration of [Nagel] signing and not revoking this Agreement and the satisfaction of [his] other commitments provided herein, [Siemens] will provide [Nagel] with certain benefits…specifically a lump sum amount of $950,000.

(*See* Exhibit A, Section 5).

24.     The Settlement Agreement, by its terms, superseded any all other agreements between Siemens and Nagel relating to the final Contingent Consideration payment.  (*See* Exhibit A, Section 13).

**B.     Siemens' Discovery of Nagel's Unlawful Conduct**

25.     On or about November 17, 2015, Nagel filed a complaint against Siemens in the Court of Common Pleas of Allegheny County, Pennsylvania.

26.     In his complaint, Nagel alleged claims for breach of his employment agreement by Siemens and for violation of the Pennsylvania Wage Payment and Collection Law ("WPCL").

27.     On December 17, 2015, Siemens removed Nagel's case to the United States District Court for the Western District of Pennsylvania.  (*See* Civil Action No. 2:15-cv001669-RCM).

28.     Discovery in that case is ongoing.

29.     On or about July 22, 2016, during discovery, Nagel's counsel informed Siemens that Nagel was in possession of flash drives and other electronic devices containing, *inter alia*, a .PST file with "over 30,000 emails" dating from 2011 to 2015, including files converted to

Siemens Exchange server from the legacy PHW and Invensys systems" as well an unspecified number of "documents from the Microsoft Office suite (.doc, .xls, .ppt, etc.)" and PDFs." (*See* Exhibit C, July 22, 2016, Letter from Vuono & Gray, LLC).

30.     This disclosure prompted Siemens to file an Emergency Motion to Compel the Expedited Return of Defendants' Property, Preservation of Electronic Data Sources, Production of Data Sources to a Forensic Examiner, and for Sanctions. (*See* Civil Action No. 2:15-cv001669- RCM at Dkt. No. 28).

31.     Nagel subsequently admitted that these documents needed to be returned to Siemens.

32.     Accordingly, Siemens and Nagel agreed to resolve Siemens' emergency motion, with the understanding that Nagel would cooperate with Siemens to return all of the documents and information he took from the company.

33.     On or about November 8, 2016, the parties entered into a Stipulated Protocol for Forensic Inspection of Nagel Electronic Data Sources ("Forensic Protocol"). (*See* Civil Action No. 2:15-cv001669- RCM at Dkt. No. 49-50).

34.     Pursuant to the Forensic Protocol, Siemens and Nagel jointly retained a third-party digital forensic specialist to conduct a forensic inspection of Nagel's data sources in order to: identify the documents belonging to Siemens, return said documents to Siemens, and purge all of Siemens' documents from Nagel's data sources. (*See* Civil Action No. 2:15-cv001669-RCM at Dkt. No. 49-50).

35.     The return of the documents and property to Siemens, and the purge of all of Siemens' documents from Nagel's data sources, has been complicated and has been made significantly more expensive due to Nagel's conduct in transferring Siemens' documents to at

least six different personal data sources (*i.e.* one external hard drive, three USB flash drives, one desktop computer and one MacBook), and then commingling Siemens' documents with his personal files and documents on those data sources.

36.     While the Forensic Protocol is ongoing, Siemens has yet to recover the documents taken by Nagel.

37.     On or about March 10, 2017, Siemens deposed Nagel.

38.     During his deposition, Nagel admitted that he had breached the Settlement Agreement. (Excerpts from the Deposition of Harry Nagel are attached hereto as Exhibit D).

39.     Nagel admitted, *inter alia*, that:

a.     He entered into the Settlement Agreement with Siemens (Exhibit D at 48:9-12);

b.     At the time he executed the Settlement Agreement, he understood that he agreed that he had not "removed from [Siemens] or Invensys Rail Corporation or retained in any form, including electronic form, any original or duplicated confidential information of [Siemens] or Invensys Rail Corporation or any modified or extracted version thereof" (Exhibit D at 48:25-49:25);

c.     He knew that he was in possession of confidential documents and information belonging to Siemens (including documents containing bidding, customer pricing and other financial information), despite his representations to the contrary (Exhibit D at 51-54, 118-119); and

d.     He had retained possession of these confidential documents belonging to Siemens until in or around November 2016, when he was forced to turn them over pursuant to the Forensic Protocol (Exhibit D at 119).

## COUNT I
## BREACH OF CONTRACT

40.     Siemens incorporates Paragraphs 1-39 of the Complaint as if set forth fully herein.

41.     Nagel and Siemens are parties to a valid and enforceable contract, the Settlement Agreement, which is supported by valid consideration, as more specifically described above.

42.     Siemens performed all of its obligations under the Settlement Agreement, including but not limited to paying Nagel consideration in the amount of $950,000 in exchange for Nagel's promises contained in the Settlement Agreement.

43.     Nagel breached the Settlement Agreement by removing and retaining confidential information belonging to Siemens.

44.     Nagel has admitted his breach of the Settlement Agreement.

45.     Nagel's breach of the Settlement Agreement has deprived Siemens of the benefit of its bargain and has caused Siemens damages, including, but not limited to, the $950,000 consideration payment made by Siemens.

46.     Nagel's breach of the Settlement Agreement has also caused and will continue to cause Siemens to suffer additional damages, including, but not limited to, Siemens' costs associated with the Forensic Protocol.

WHEREFORE, Siemens hereby demands judgment in its favor and against Nagel for expectation, reliance, and/or restitution damages, compensatory damages, and all other legal or equitable relief which this Court deems just, equitable, and proper.

## COUNT II
## FRAUDULENT INDUCEMENT/MISREPRESENTATION

47.     Siemens incorporates Paragraphs 1-46 of the Complaint as if fully set forth herein.

48.     During the negotiation of the Settlement Agreement, Nagel represented to Siemens that he had not removed or retained any confidential documents belonging to Siemens, when in fact he had copied and/or downloaded a .PST file with over 30,000 emails as well as approximately 4,000 other documents belonging to Siemens and knowingly was in possession of such documents.

49.     Nagel has admitted that he knowingly and intentionally made this false representation to Siemens in entering into the Settlement Agreement.

50.     Nagel's misrepresentation that he had not removed or retained any confidential documents belonging to Siemens was material to the Settlement Agreement.

51.     Nagel's misrepresentation was made with the intent to induce Siemens into entering into the Settlement Agreement and making the payment to Nagel in the amount of $950,000.

52.     Siemens' reliance on Nagel's misrepresentation was justified.

53.     Nagel's actions as described herein are outrageous.

54.     Nagel's conduct was fraudulent and has caused and will continue to cause Siemens to suffer damages, including, but not limited to, the $950,000 consideration payment made by Siemens and the costs and fees associated with the Forensic Protocol (*i.e.*, identifying the documents belonging to Siemens, returning the documents to Siemens, and to purging all of Siemens' documents from Nagel's data sources).

WHEREFORE, Siemens hereby demands judgment in its favor and against Nagel for compensatory and punitive damages and all other legal or equitable relief which this Court deems just, equitable and proper.

## COUNT III
## BREACH OF DUTY OF LOYALTY

55.     Siemens incorporates Paragraphs 1 through 54 of the Complaint as if set forth fully herein.

56.     As an employee of Siemens, Nagel owed a common law duty of loyalty to Siemens.

57.     Rather than fulfill his common law duty of loyalty, Nagel acted in his own self-interest and engaged in self-dealing.

58.     Upon information and belief, over the course of his employment with Siemens and in the months leading up to his resignation, Nagel, who is also subject to post-employment restrictive covenants, copied and/or downloaded Siemens' confidential, privileged and/or proprietary information, without authorization and for his personal benefit.

59.     Nagel's conduct as described herein is outrageous.

60.     Nagel's breach of his common law duty of loyalty has caused and, will continue to cause, Siemens to suffer damages.

WHEREFORE, Siemens hereby demands judgment in its favor and against Nagel for compensatory and punitive damages, and all other legal or equitable relief which this Court deems just, equitable and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Siemens Industry, Inc., demands:

(a)     An award of expectation, reliance, and/or restitution damages;

(b)      An award of compensatory damages, in an amount to be determined by the evidence presented at trial;

(c)      An award of punitive damages in an amount to be determined by the evidence presented at trial;

(d)      An award of costs and expenses expended herein as allowed by law;

(e)      An award of prejudgment interest as allowed by law; and

(f)      Any and all other legal or equitable relief which this Court deems just, equitable and proper.

Respectfully submitted,


*/s/ Robert W. Cameron*

Robert W. Cameron (PA ID No. 69059)
  bcameron@littler.com
Allison R. Brown (PA ID No. 309669)
  arbrown@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
Telephone:  (412) 201-7635/7669
Facsimile:  (412) 456-2377


*Attorneys for Plaintiff*
*Siemens Industry, Inc.*

Dated: April 24, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this 24th day of April, 2017, a true and correct copy of the foregoing Amended Complaint was served via First-Class mail and electronic mail, upon the following counsel of record:

Mark T. Vuono
mvuono@vuonogray.com
Dennis J. Kusturiss
dkusturiss@vuonogray.com
Erica G. Wilson
ewilson@vuonogray.com
VUONO & GRAY, LLC
310 Grant Street, Suite 2310
Pittsburgh, PA 15219

*/s/ Robert W. Cameron*
Robert W. Cameron