# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**SIEMENS INDUSTRY, INC.**

        Plaintiff,

    v.

**HARRY C. NAGEL**

        Defendant.

Civil Action No. 2:17-cv-00405-RCM

*Filed Electronically*

---

## BRIEF IN SUPPORT OF
## DEFENDANT NAGEL'S MOTION TO DISMISS

---

Dennis J. Kusturiss (PA 28003)
Mark T. Vuono (PA 33351)
Erica G. Wilson (PA 316343)

VUONO & GRAY, LLC
310 Grant Street, Suite 2310
Pittsburgh, PA 15219
Tel. (412) 471-1800
Fax. (412) 471-4477
dkusturiss@vuonogray.com
mvuono@vuonogray.com
ewilson@vuonogray.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

LEGAL STANDARD ................................................................................................ 3

ARGUMENT.......................................................................................................... 4

    A.  Each claim in Siemens' Amended Complaint was a compulsory
        counterclaim in the Nagel Action that Siemens failed to assert,
        and as such, they are barred by Fed. R. Civ. P. 13(a)................................. 4

    B.  The parol evidence rule bars Siemens' claims for fraudulent
        inducement and misrepresentation. ........................................................ 6

    C.  Siemens' counts for fraudulent inducement/misrepresentation
        and breach of duty of loyalty are barred by the gist of the
        action doctrine as mere restatements of an alleged breach of
        contract. .......................................................................................... 8

    D.  Siemens has not pleaded sufficient facts to support its breach of
        contract or breach of duty of loyalty claims. ..........................................11

CONCLUSION .....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 499 (E.D. Pa. 2008) ...................... 9, 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 3, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................ 3

*Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978) ............................................................................................................................ 5

*Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010). ................................ 8

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014) ........................................................ 9

*Charlton v. Gallo*, No. CIV.A. 09-2447, 2010 WL 653155, at *4 (E.D. Pa. Feb. 19, 2010) ...... 7

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999) ........................... 11

*Cricket Grp., Ltd. v. Highmark, Inc.*, No. CV 16-1141, 2017 WL 2373656, at *3 (W.D. Pa. Mar. 31, 2017), *report and recommendation adopted,* No. CV 16-1141, 2017 WL 2363774 (W.D. Pa. May 31, 2017) .............................................................................................. 3, 9, 13

*Cricket Grp., Ltd. v. Highmark, Inc.*, No. CV 16-1141, 2017 WL 2373656, at *6 (W.D. Pa. Mar. 31, 2017), *report and recommendation adopted,* No. CV 16-1141, 2017 WL 2363774 (W.D. Pa. May 31, 2017) ................................................................................................ 9, 10

*Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016). ..................................................... 8

Gianni v. Russell & Co., 281 Pa. 320, 126 A. 791, 792 (1924). ............................................ 7

*Hart v. Arnold*, 884 A.2d 316, 341 (Pa.Super.Ct.2005) ........................................................ 7

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) .......................... 4

*Orthovita, Inc. v. Erbe,* No. CIV.A.07–2395, 2008 WL 423446, at *7 (E.D.Pa. Feb. 14, 2008). 9

*Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)) ....... 6

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389–90 (3d Cir. 2002) ................................................................................................................. 5, 6

*USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016)..............................................................................................................8, 12

*West Run Student Housing Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165 (3d Cir. 2013) ..............................................................................................................................11, 13

*Wheeler v. Wheeler*, 639 F. App'x 147, 150 n. 10 (3d Cir. 2016), ............................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

Fed. R. Civ. P. 13(a) ............................................................................................................ ii, 4

*Nagel v. Siemens Industry, Inc. et al.*, No. 2:15-cv-01669-RCM (W.D. Pa. Dec. 17, 2015)......... 1

## PRELIMINARY STATEMENT

As Siemens alleges in its Amended Complaint, in 2012, Defendant Harry C. Nagel ("Nagel") and his partner sold their company, PHW, Inc., to Invensys Rail Corporation ("Invensys"). (Am. Compl. ¶¶ 7-8, Doc. 6 at ECF p. 2.) As part of the sale, Nagel entered into an employment contract to stay with Invensys as PHW, Inc.'s Senior General Manager. (Am. Compl. ¶ 12, Doc. 6 at ECF p. 2.) Less than one year later, Plaintiff Siemens Industry, Inc. ("Siemens") acquired Invensys, becoming Nagel's new employer. (Am. Compl. ¶ 13, Doc. 6 at ECF p. 2.) Nagel resigned on April 3, 2015. (Am. Compl. ¶ 14, Doc. 6 at ECF p. 2.) In a previously filed case pending before this Court, Nagel is suing Siemens for breach of his employment contract and for claims under the Pennsylvania Wage Payment and Collection Law ("Nagel Action"). (Am. Compl. ¶¶ 25-27, Doc. 6 at ECF p. 5; *see* Defs.' Notice of Removal Ex. 3 (Compl.), *Nagel v. Siemens Industry, Inc. et al.*, No. 2:15-cv-01669-RCM (W.D. Pa. Dec. 17, 2015), ECF No. 1-3 at ECF p. 2.)

In this case, Siemens' Amended Complaint pleads counts for breach of contract and fraudulent inducement/misrepresentation. (Am. Compl. pp. 8-9, Doc. 6 at ECF pp. 8-9.) Both counts arise from a December 2015 settlement agreement concerning a final payment that Siemens owed to Nagel under the Stock Purchase Agreement with Invensys ("SPA"). (Am. Compl. pp. 8-9, Doc. 6 at ECF pp. 8-9.) Siemens has also asserted a third count of breach of duty of loyalty based on alleged misconduct during Nagel's employment. (Am. Compl. p. 9, Doc. 6 at ECF p. 9.) All three counts in Siemens' Amended Complaint are founded on Nagel's July 22, 2016 disclosure in the Nagel Action that he had possession of electronic information from both his former company and Siemens.[1] (Am. Compl. ¶¶ 43, 48, 58, Doc. 6 at ECF pp. 8-10.)

---

1 Although Nagel admitted that he possessed copies of numerous emails and documents among several devices, the extent to which those records belong to Siemens or are confidential has not been resolved. (Am. Compl. ¶ 36; Doc. 6 at ECF p. 7.) That

Based on that same disclosure, on August 15, 2016, Siemens filed a Motion for Leave to File an Amended Answer to Complaint and Affirmative and Additional Defenses ("Motion for Leave") in the Nagel Action. (Defs.' Mot. for Leave, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Aug. 15, 2016), ECF No. 19.) In its Motion for Leave, Siemens relied upon the disclosure to assert an after-acquired evidence defense, but did not seek to add as counterclaims any of the claims it is now asserting in this action. (Defs.' Br. Supp. Mot. for Leave, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Aug. 15, 2016), ECF No. 20.)

Instead of amending its Answer to include the new affirmative defense *and* its counterclaims to ensure all related claims are adjudicated in the Nagel Action, Siemens chose to wait until April 3, 2017 – the last day before the statute of limitations expired as to any tort claims arising from Nagel's employment – to file its Complaint. (Compl., Apr. 3, 2017, Doc. 1.) Meanwhile, discovery continued in the Nagel Action, but because Nagel was not on notice of Siemens' claims against him, he was deprived of the opportunity to explore those issues in its discovery. (Am. Compl. ¶ 28, Doc. 6 at ECF p. 5.) Siemens' decision to delay raising its claims is inconsistent with the objectives of judicial economy, proportionality, and the just, speedy, and inexpensive determination of a dispute underlying Federal Rule of Civil Procedure 13(a). As a result, Siemens has waived these belated claims.

Further, even if Siemens had asserted its claims in this action as counterclaims in the Nagel Action, Pennsylvania law unequivocally bars its tort claims. The parol evidence rule bars Siemens' claims for fraudulent inducement and misrepresentation because the alleged misrepresentation is contained within a fully integrated contract. Similarly, the gist of the action doctrine prohibits Siemens' claims for fraudulent inducement and misrepresentation and breach of duty of loyalty; these claims are merely attempts to augment the damages

---

determination will be made pursuant to the Forensic Protocol, which is ongoing. (Am. Compl. ¶ 33-36, Doc. 6 at ECF pp. 11-12; *see* Doc. 50.) For purposes of this motion, it may be assumed that some of the information Nagel retained is confidential Siemens information.

available for breach of contract by pleading the same alleged misconduct as the basis for redundant tort claims.

Finally, Siemens' breach of contract and breach of duty of loyalty claims suffer from insufficient pleading, containing only conclusory allegations that demonstrate nothing more than Siemens' understanding of the relevant legal elements. Lacking the required factual allegations to support them, the unelaborated labels and conclusions fail to show Siemens is entitled to any relief.

Because Siemens' entire Amended Complaint fails on both procedural and substantive grounds, it should be dismissed with prejudice.

## LEGAL STANDARD

A complaint must allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) begins its analysis by "reject[ing] legal conclusions unsupported by factual allegations, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;' 'labels and conclusions;' and "'naked assertion[s]' devoid of 'further factual enhancement."'" *Cricket Grp., Ltd. v. Highmark, Inc.*, No. CV 16-1141, 2017 WL 2373656, at *3 (W.D. Pa. Mar. 31, 2017), *report and recommendation adopted,* No. CV 16-1141, 2017 WL 2363774 (W.D. Pa. May 31, 2017) (quoting *Iqbal,* 556 U.S. at 678). Any remaining averments of facts must show a right to relief beyond mere speculation or suspicion of a "legally cognizable right of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d 929 (internal citations omitted).

In determining whether well-pleaded facts plausibly give rise to a right to relief, the court generally considers only the complaint; however, the court can take judicial notice of public records, including court proceedings, *Wheeler v. Wheeler*, 639 F. App'x 147, 150 n. 10 (3d Cir. 2016), and any documents "integral to or explicitly relied upon in the complaint"

without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## ARGUMENT

**A.    Each claim in Siemens' Amended Complaint was a compulsory counterclaim in the Nagel Action that Siemens failed to assert, and as such, they are barred by Fed. R. Civ. P. 13(a).**

A party is required to state any counterclaim it has against an opposing party at the time it serves its pleading if the counterclaim (A) arises from the same transaction or occurrence as the opposing party's claim, and (B) would not require joining a third party over whom the court lacks jurisdiction. Fed. R. Civ. P. 13(a)(1).

In the cover sheet Siemens filed with its Complaint, Siemens certifies that its case is related to the Nagel Action.[2] (Pl.'s Civil Cover Sheet, Doc. 1-1.) The complaints in both actions attach the SPA as an exhibit and either attach or expressly refer to Nagel's employment agreement. (Am. Compl. Ex. B, Doc. 6-2; Am. Compl. ¶ 10-13, Doc. 6 at ECF p. 3; Defs.' Notice of Removal Ex. 3 (Compl.), *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Dec. 17, 2015), ECF No. 1-3 at ECF p. 17 and ECF No. 1-3 at ECF p. 83.)

Further, Siemens' Amended Complaint makes the following significant allegations:

> (1) All three counts are based on Nagel's July 22, 2016 disclosure in the Nagel Action that he was in possession of electronic documents belonging to his former business and to Siemens, and
>
> (2) this disclosure prompted Siemens to file in the Nagel Action its August 19, 2016 Emergency Motion to Compel the Expedited Return of Defendants' Property, Preservation of

---

[2] The Civil Cover Sheet provides that a case is related if it "relates to property included in another suit or **involves the same issues of fact or it grows out of the same transactions as another suit** or involves the validity or infringement of a patent involved in another suit." (Pl.'s Civil Cover Sheet, Doc. 1-1 at ECF p. 2 (emphasis added).)

Electronic Data Sources, Production of Data Sources to a Forensic Examiner, and for Sanctions ("Motion to Compel").

(Am. Compl. ¶ 29-30, pp. 8-10, Doc. 6 at ECF pp. 5-6 and Doc. 6 at ECF pp. 8-10; *see* Defs.' Mot. to Compel and Br. Supp. Mot. to Compel, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Aug. 19, 2016), ECF No. 28 and ECF No. 29.)[3]

Omitted from Siemens' Amended Complaint is any reference to Siemens' Motion for Leave to File an Amended Answer to Complaint and Affirmative and Additional Defenses in the Nagel Action ("Motion for Leave"), which was also based on that same disclosure, and was filed only four days before Siemens filed its Motion to Compel. (Defs.' Mot. for Leave, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Aug. 15, 2016), ECF No. 19.)

The "same transaction or occurrence" requirement in Rule 13(a) is satisfied if there is a "logical relationship to an opposing party's claim." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389–90 (3d Cir. 2002) (internal citations omitted). A logical relationship exists if separate trials would substantially duplicate the time and efforts of the parties and the courts by involving the same factual issues, legal issues, or basic controversy between the parties. *Id.*

Compliance with Rule 13(a) is incentivized by the threat of waiver: "A compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978). In *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002), Transamerica Occidental Life Insurance Company ("Transamerica") had been sued in Texas and removed that action to federal court. Id. at 388. While the Texas case was

---

[3] Siemens omitted from its Amended Complaint that it knew as early as March 28, 2016, when the parties conferred regarding discovery in the Nagel Action, that Nagel possessed electronically stored information belonging to Siemens. (Defs.' Statement of Material Facts Supp. Mot. to Compel ¶ 14-17 and Ex. 4, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Aug. 19, 2016), ECF No. 30 at ECF pp. 3-4, ECF No. 30-4 (identical exhibit filed under seal at ECF No. 41), and ECF No. 30-5 at ECF pp.2-3.) The specific file extensions involved, disclosed by Nagel on July 22, 2016, are not material to Siemens' claims.

pending, and before filing an answer or counterclaim, Transamerica filed a complaint in New Jersey District Court raising the same claims it was defending in Texas. *Id.* The New Jersey District Court dismissed Transamerica's suit, finding the claims were compulsory counterclaims to the Texas action. *Id.*

Even though Fed. R. Civ. P. Rule 13(a)(2) expressly provides that a claim is <u>not</u> a compulsory counterclaim if it is the subject of a pending action when the later pleading is filed, the Third Circuit affirmed the dismissal. *Id.* The Third Circuit explained its holding was due to the policy goal behind Rule 13(a) – judicial economy:

> by finding the action at issue in this case to be barred as a compulsory counterclaim that Transamerica should have filed in the Texas action, we effectuate the purpose of Rule 13(a) "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."

*Id.* at 292 F.3d 393 (quoting *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)).

The Nagel Action and this case involve the same factual and legal issues, and the proper response was for Siemens to raise its present claims as counterclaims in its August 15, 2016 Motion for Leave. Siemens' failure to do so has substantially duplicated the time and efforts of the parties and this Court by requiring the litigation of the same case on two separate tracks and by ensuring that discovery in the Nagel Action will not be proportional, as it has been conducted to explore an incomplete list of claims. Because Siemens should have included its present claims as counterclaims in the Nagel Action and failed to do so, the claims are barred by Rule 13(a) and the entire Amended Complaint should be dismissed with prejudice.

**B.       The parol evidence rule bars Siemens' claims for fraudulent inducement and misrepresentation.**

The parol evidence rule excludes any evidence regarding any representations made during the negotiation of an integrated contract like Settlement Agreement between Nagel

and Siemens. Because Siemens cannot introduce evidence regarding Nagel's alleged misrepresentations before the Settlement Agreement was signed, it cannot prove its claim for fraudulent inducement or misrepresentation as a matter of law, and its claim should be dismissed with prejudice.

Where the parties deliberately reduce their agreements to writing, all preliminary negotiations are merged into and superseded by the written agreement, and its terms cannot be varied by parol evidence. Gianni v. Russell & Co., 281 Pa. 320, 126 A. 791, 792 (1924). "Where a party claims fraud in the inducement and the written contract is fully integrated, the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement prior to the contract's execution." *Charlton v. Gallo*, No. CIV.A. 09-2447, 2010 WL 653155, at *4 (E.D. Pa. Feb. 19, 2010) (citing *Hart v. Arnold*, 884 A.2d 316, 341 (Pa.Super.Ct.2005)).

In this case, the Settlement Agreement includes a provision concerning Nagel's agreement that he has not removed or retained confidential information belonging to Invensys or Siemens after he sold his company, the alleged misrepresentation giving rise to Siemens' claim. (Am. Compl. ¶ 4, Doc. 6-1 at ECF p. 2.) The Settlement Agreement also contains an integration clause:

> This Agreement constitutes the entire Agreement between the Company and you with respect to the subject matter hereof, and it supersedes any and all other agreements, whether written or oral, between the Company and you with respect to the subject matter hereof, excluding those agreements referenced in Paragraph 7.

(Am. Compl. Ex. A ¶ 13, Doc. 6-1 at ECF p. 4.)[4]

---

[4] That is, "The Settlement Agreement, by its terms, superseded any [*sic*] all other agreements between Siemens and Nagel relating to the final Contingent Consideration payment. (*See* Exhibit A, Section 13.)" (Am. Compl. ¶ 24, Doc. 6 at ECF p. 5.)

The alleged prior fraudulent misrepresentations are the subject of a provision set forth in writing in an integrated agreement; accordingly, they are barred as parol evidence and Siemens' claim cannot proceed as a matter of law.[5]

**C.   Siemens' counts for fraudulent inducement/misrepresentation and breach of duty of loyalty are barred by the gist of the action doctrine as mere restatements of an alleged breach of contract.**

In Pennsylvania, the gist of the action bars a plaintiff from raising tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016) (citations omitted). In evaluating whether the gist of the action doctrine applies, "[the court] must examine the factual allegations and ask, '[w]hat's this case really about?'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016).

Siemens' fraudulent inducement/misrepresentation count concerns only Nagel's alleged (inadmissible) misrepresentations regarding his possession of Siemens' information after his resignation, contrary to the terms of the Settlement Agreement. Siemens directly or indirectly refers to the Settlement Agreement in six of its seven substantive paragraphs supporting this count. (Am. Compl. ¶ 48-52, 54, Doc. 6 at ECF p. 9.) There is no allegation of any fact supporting this claim beyond the scope of the terms of the Settlement Agreement. Accordingly, the gist of the action doctrine bars this count. *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010).

---

[5] Nagel's deposition testimony relied upon by Siemens is superfluous; by definition, post-execution statements cannot have induced Siemens to sign the Settlement Agreement.

As to the claim of breach of duty of loyalty in Count II of Siemens' Amended Complaint, Siemens alleges the same misconduct behind its breach of contract claim also violated Nagel's common law duty of loyalty to Siemens. (Am. Compl. ¶ 56-60, Doc. 6 at ECF p. 10.) Obligations under a fiduciary duty of loyalty can arise as a matter public policy. *Orthovita, Inc. v. Erbe,* No. CIV.A.07–2395, 2008 WL 423446, at *7 (E.D.Pa. Feb. 14, 2008). However, a breach of such a duty "can only coexist with a breach of a contractual obligation '**if the fiduciary duty is not based on a contractual agreement** between the parties.'" *Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 499 (E.D. Pa. 2008) (emphasis added). Pennsylvania's Supreme Court has recently held:

> [O]ur Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, **the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling**.

*Cricket Grp., Ltd. v. Highmark, Inc.*, No. CV 16-1141, 2017 WL 2373656, at *6 (W.D. Pa. Mar. 31, 2017), *report and recommendation adopted,* No. CV 16-1141, 2017 WL 2363774 (W.D. Pa. May 31, 2017) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014)) (emphasis added).

If the complaint's allegations show that the duty breached was "created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract," the action is for breach of contract. *Id.* If the allegations show the misconduct regards "a broader social duty owed to all individuals, which…exists regardless of the contract," then the claim sounds in tort. *Id.* This distinction is "the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint." *Id.*

Siemens' averment regarding Nagel's "common law duty" is belied by the existence of Nagel's written employment agreement, Siemens' admission that it assumed the employment agreement, (Am. Compl. ¶ 13, Doc. 6 at ECF p. 3), and Siemens' explicit reference – under the very count claiming a common law duty – to the "post-employment restrictive covenants" contained within it. (Am. Compl. ¶ 58, Doc. 6 at ECF p. 10; *See* Nagel's Employment Agreement, attached hereto as Exhibit A; *See also* Notice of Removal Ex. 3 (Compl.), *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Dec. 17, 2015), ECF No. 1-3 at ECF pp. 83-88.)[6]

Nagel's employment agreement is contractual and expressly refers to and incorporates by reference other written confidentiality and non-disclosure agreements:

> **You will be required to sign a confidentiality and non-disclosure agreement** upon your employment. You also shall be required to sign the "Anti-Bribery/Anti-Corruption/Code of Conduct" of Invensys. This is an on-line program, the link for which will be sent to you after commencement of your employment. **Your acceptance of these Policies is also deemed to be a part of the employment terms at IRNA.**

(Def.'s Br. Supp. Mot. Dismiss Ex. A ¶ 9 (emphasis added).)

Siemens' attempt to recast Nagel's contractual obligations as a duty of loyalty is to no avail. The true gist and gravamen of Siemens' claim concerns only Nagel's alleged failure to adhere to a contract provision. Under governing Pennsylvania law, where no common law duty is implicated, no tort claims are permitted, and Counts II and III should be dismissed. *See Cricket Grp., Ltd. v. Highmark, Inc.*, No. CV 16-1141, 2017 WL 2373656, at *7 (W.D. Pa. Mar. 31, 2017), *report and recommendation adopted*, No. CV 16-1141, 2017 WL 2363774 (W.D. Pa. May 31, 2017).

---

[6] Because Siemens expressly refers to Nagel's employment agreement in its Amended Complaint and it is a matter of public record in the Nagel Action, it can be considered by the Court without converting this motion into one for summary judgment.

**D.     Siemens has not pleaded sufficient facts to support its breach of contract or breach of duty of loyalty claims.**

Bare assertions in a complaint amounting to nothing more than a "'formulaic recitation of the elements'…are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (internal citations omitted).

A breach of contract claim under Pennsylvania law requires a plaintiff to allege "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 502 (E.D. Pa. 2008) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999)).

In *West Run Student Housing Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165 (3d Cir. 2013), the plaintiff alleged a breach of contract claim based on the disclosure of confidential information. The district court found plaintiff alleged insufficient facts to support the conclusion that any proprietary information had been disclosed and dismissed. Id. at 169. Affirming the district court's dismissal, the Third Circuit agreed that Plaintiff

> offers no more than an allegation that confidential information was disclosed and a bare assertion that this violated the duty of good faith and fair dealing. **[Plaintiff] does not plead facts regarding the nature of the disclosed information, who disclosed it, or when it was disclosed. Nor does the amended complaint contain any corroborating factual averments that confidential information was disclosed at all.**

Id. at 169–70 (emphasis added).

To establish a breach of duty of loyalty to an employer, Siemens must show (1) that Nagel negligently or intentionally failed to act in good faith and solely for the benefit of the employer in all matters for which he or she was employed; (2) that Siemens suffered injury; and (3) that Nagel's failure to act solely for the employer's benefit was a real factor in

bringing about the employer's injuries. *USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *6 (W.D. Pa. Nov. 22, 2016).

In support of its breach of contract and duty of loyalty claims, Siemens has alleged the following facts (numbered according to the paragraphs of its Amended Complaint):

1. Nagel resigned on April 3, 2015.
17. The settlement agreement allegedly breached related to a Contingent Consideration payment in the amount of $950,000, in exchange for Nagel agreeing to release any and all rights and claims under the SPA.
21. The settlement agreement was signed December 9, 2015.
29. Nagel disclosed his possession of emails and other documents including Siemens documents on July 22, 2016.
36. Siemens has yet to recover the documents taken by Nagel.
43. Nagel breached the Settlement Agreement by removing and retaining confidential information belonging to Siemens.
44. Nagel admitted his breach of the Settlement Agreement.
45. Nagel's alleged breach has deprived Siemens of the benefit of its bargain and has caused Siemens damages, including, but not limited to, the $950,000 consideration payment made by Siemens.
56. As an employee of Siemens, Nagel owed a common law duty of loyalty to Siemens.
57. Rather than fulfill his common law duty of loyalty, Nagel acted in his own self-interest and engaged in self-dealing.
58. Upon information and belief, over the course of his employment with Siemens and in the months leading up to his resignation, Nagel, who is also subject to post-employment restrictive covenants, copied and/or downloaded Siemens' confidential, privileged and/or proprietary information, without authorization and for his personal benefit.
59. Nagel's conduct as described herein is outrageous.
60. Nagel's breach of his common law duty of loyalty has caused and, [*sic*] will continue to cause, Siemens to suffer damages.

Missing from these allegations are any facts to support Siemens' claim that Nagel wrongfully possesses confidential information and does so for his personal benefit. First, Siemens' definition of "Confidential Information" is circuitously defined to include "any and all confidential or proprietary written, recorded or oral information or data," making the nature of the information as "confidential" difficult to ascertain. (Am. Compl. Ex. B,

Doc. 6-1 at ECF p. 3.) Second, Siemens has not alleged any facts about why Nagel's alleged access to company documents was "without authorization." Considering the alleged copying and downloading of information occurred "over the course of his employment," it seems equally plausible that Nagel did so as part of his job because he was at work.

Even if Siemens knew how to tell which of its documents are confidential (that is, information not publicly available, distributed only on a need to know basis, protected from unauthorized access and distribution, etc.) and who has authorization to access them, Siemens admits it has yet to receive any of the documents in Nagel's possession to enable it to make that determination. (Am. Compl. ¶ 36, Doc. 6 at ECF p. 7.) Further, Siemens has alleged no facts whatsoever to support its conclusory claims that Nagel acted in his own self-interest, engaged in self-dealing, or accessed any information for his own personal benefit. Unlike the typical breach of duty of loyalty claim, Siemens does not allege usurpation of corporate opportunity, the sale or other use of any of its information by Nagel for profit, or the use of the information to solicit employees. Siemens has not even provided facts related to its damages, pleading only that Nagel's alleged breach of duty "has caused and, [*sic*] will continue to cause, Siemens to suffer damages." (Am. Compl. ¶ 60, Doc. 6 at ECF p. 6.)

Like the plaintiff in *West Run, supra*, Siemens has only alleged that confidential information was removed and retained, therefore a contract and duty of loyalty were breached, and Siemens has been damaged. Such conclusory statements are not entitled to be believed as true. *Cricket, supra*. Siemens merely suspects, but has not shown, that Nagel breached a contract or fiduciary duty.[7] Accordingly, Siemens has failed to plead Counts I or III with the required specificity, and they should be dismissed with prejudice.

---

[7] Query (1) whether Nagel can breach an agreement signed on December 9, 2015 by an action that allegedly took place eight months earlier, and (2) whether one has been damaged by costs that it expressly agreed to pay. (Am. Compl. ¶ 34, Doc. 6 at ECF p. 6; *see also* Forensic Protocol ¶ 6, *Nagel*, No. 2:15-cv-01669-RCM (W.D. Pa. Nov. 9, 2016), ECF No. 50 at ECF p. 4 ("The Forensic Examiner's charges, and any costs for shipping physical media

**CONCLUSION**

For the above reasons, Siemens' Amended Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

/s/ *Dennis J. Kusturiss*
Dennis J. Kusturiss (PA 28003)
Mark T. Vuono (PA 33351)
Erica G. Wilson (PA 316343)

VUONO & GRAY, LLC
310 Grant Street, Suite 2310
Pittsburgh, PA 15219
Tel. (412) 471-1800
Fax. (412) 471-4477
dkusturiss@vuonogray.com
mvuono@vuonogray.com
ewilson@vuonogray.com

*Attorneys for Defendant*

Dated: July 17, 2017

---

to or from the Forensic Examiner, shall be paid equally (on a 50/50 basis) by Nagel and Siemens.").)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Dennis J. Kusturiss*