IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIEMENS INDUSTRY, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 17-405 |
| | ) | |
| HARRY C. NAGEL, | ) | Magistrate Judge Mitchell |
|     Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff, Siemens Industry, Inc. ("Siemens"), brings this action under Pennsylvania law against Defendant, Harry C. Nagel ("Nagel"), alleging claims of breach of contract, fraudulent inducement/ misrepresentation and breach of loyalty arising out of a Settlement Agreement previously reached between the parties.

Presently submitted for disposition is a motion to dismiss, filed by the Defendant. In response, Plaintiff agrees to withdraw Count II of the Amended Complaint, the claim for fraudulent inducement/misrepresentation, but opposes the motion in all other respects. For the reasons that follow, the motion will be granted with respect to Counts II and III of the Amended Complaint and denied with respect to Count I.

Facts

Prior to May 9, 2012, Nagel was one of two co-owners of PHW, Inc. ("PHW"). (Am. Compl. ¶ 7.)[1] On May 9, 2012, Invensys Rail Corporation ("Invensys") purchased all of the shares of PHW from Nagel and John Harrison ("Harrison") pursuant to a Stock Purchase Agreement ("SPA"). (Id. ¶ 8 & Ex. B.) As consideration for the sale of PHW, Invensys paid Nagel and Harrison $17,000,000. (Id. ¶ 9.) Under the terms of the SPA, Nagel and Harrison were also eligible to receive additional "Contingent Consideration" if certain conditions were met

---

[1] ECF No. 6.

during the relevant Measurement Periods. (Id. ¶ 10.)

In connection with the SPA, Nagel entered into an Employment Agreement with Invensys pursuant to which he agreed to be employed as Senior General Manager of the PHW business unit. (Id. ¶ 12.) On May 2, 2013, Siemens acquired Invensys and assumed the SPA and Nagel's Employment Agreement. (Id. ¶ 13.) On April 3, 2015, Nagel resigned from his employment with Siemens. (Id. ¶ 14.)

Between April 2015 and December 2015, Siemens and Nagel had communications regarding both the calculation and payment of Contingent Consideration to Nagel for the final Measurement Period. (Id. ¶ 15.) Nagel and Siemens did not agree on the terms and conditions for the Contingent Consideration to be paid to Nagel, and Nagel threatened suit. (Id. ¶ 16.) Ultimately, Siemens and Nagel agreed to resolve their dispute, with Siemens agreeing to pay Nagel a final Contingent Consideration payment in the amount of $950,000, in exchange for Nagel agreeing, among other things, to release any and all rights and claims under the SPA. (Id. ¶ 17.)

During the course of these negotiations, Nagel represented to Siemens that he had not removed or retained any information or documents belonging to Siemens, other than some older, duplicate files that predated the sale of PHW to Invensys. (Id. ¶ 19.) This was a material term of the parties' agreement to resolve their dispute, and was a term that Siemens insisted be included in the Settlement Agreement. (Id. ¶ 20.) On December 9, 2015, Nagel executed the Settlement Agreement, agreeing to its terms. (Id. ¶ 21 & Ex. A.) By the terms of the Settlement Agreement, Nagel represented and agreed that he had not "removed from [Siemens] or Invensys Rail Corporation or retained in any form, including electronic form, any original or duplicated confidential information of [Siemens] or Invensys Rail Corporation or any modified or extracted

version thereof." (Id. ¶ 22 & Ex. A ¶ 4.) Siemens agreed that: "in consideration of [Nagel] signing and not revoking this Agreement and the satisfaction of [his] other commitments provided herein, [Siemens] will provide [Nagel] with certain benefits…specifically a lump sum amount of $950,000." (Id. ¶ 23 & Ex. A ¶ 5.)

On November 17, 2015, Nagel filed a complaint against Siemens in the Court of Common Pleas of Allegheny County, Pennsylvania. In that complaint, Nagel alleged claims for breach of his Employment Agreement by Siemens and for violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). On December 17, 2015, Siemens removed that case to this Court. (See Civil Action No. 2:15-cv-1669 (the "Nagel Action," ECF No. 1)). On December 23, 2015, Siemens timely filed its Answer to Nagel's Complaint and Affirmative and Additional Defenses ("Answer"). (Nagel Action, ECF No. 3.)

On July 22, 2016, during discovery, Nagel's counsel informed Siemens that Nagel was in possession of flash drives and other electronic devices containing, inter alia, a .PST file with "over 30,000 emails" dating from 2011 to 2015, including files converted to Siemens Exchange server from the legacy PHW and Invensys systems" as well an unspecified number of "documents from the Microsoft Office suite (.doc, .xls, .ppt, etc.)" and PDFs." (Am. Compl. ¶ 29 & Ex. C.)

On August 15, 2016, Siemens filed a Motion for Leave to File an Amended Answer ("Motion to Amend") to include the affirmative defense of after-acquired evidence. (Nagel Action, ECF No. 19). The Court subsequently entered an Order granting Siemens' Motion to Amend and Siemens filed its Amended Answer on September 6, 2016. (Nagel Action, ECF Nos. 44, 45.) The Amended Answer does not contain counterclaims.

On August 19, 2016, Siemens filed an Emergency Motion seeking, inter alia, a court

order directing Nagel to return Siemens' property, preserve Nagel's electronic data sources, and produce Nagel's data sources to a forensic examiner. (Am. Compl. ¶ 30; Nagel Action, ECF No. 28.) On August 26, 2016, Nagel served his response on Siemens and the Court via email, per the Court's instruction. The parties engaged in further meet and confer discussions on August 29, 2016. Siemens indicates that, during those discussions, the parties agreed that all matters addressed in the Emergency Motion would be resolved amicably and notified the Court regarding same. Accordingly, on that same date, the Court entered an Order dismissing, without prejudice, Siemens' Emergency Motion. (Nagel Action, ECF No. 35.) The parties engaged in further meet and confer discussions and developed a mutually agreeable protocol for the forensic examination of Nagel's data sources. On November 8, 2016, the parties filed their agreed-upon Stipulated Protocol for Forensic Inspection of Nagel's Electronic Data Sources ("Forensic Protocol"). (Nagel Action, ECF No. 49.) On November 9, 2016, the Court issued an Order approving the Forensic Protocol. (Nagel Action, ECF No. 50.) (Am. Compl. ¶¶ 30-33.)

On March 10, 2017, Siemens deposed Nagel. (Am. Compl. ¶ 37.) During his deposition, Nagel admitted that he had: (1) entered into a Settlement Agreement with Siemens which contained the clause cited above; (2) taken and retained confidential documents and information belonging to Siemens, including documents containing bids, pricing, and other financial information; and (3) knowingly retained this confidential information in breach of the Settlement Agreement until November 2016, when he was forced to turn them over pursuant to the Forensic Protocol. (Am. Compl. ¶¶ 38-39 & Ex. D at 48-49, 51-54, 118-19.)

Procedural History

On April 3, 2017, Plaintiff filed this action (ECF No. 1) and on April 24, 2017, it filed an Amended Complaint (ECF No. 6). Jurisdiction is based upon diversity of citizenship in that:

Plaintiff is a Delaware corporation with its principal place of business in Alpharetta, Georgia; Defendant is a citizen of Pennsylvania; and the amount in controversy exceeds the sum of $75,000.00, excluding interest and costs. (Am. Compl. ¶¶ 3-5.)

Count I alleges a claim of breach of contract. Count II alleges a claim of fraudulent inducement/misrepresentation. Count III alleges a claim of breach of the duty of loyalty.

On July 17, 2017, Defendant filed a motion to dismiss (ECF No. 12). On August 7, 2017, Plaintiff filed a brief in opposition (ECF No. 20) and August 22, 2017, Defendant filed a reply brief (ECF No. 21).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a

5

> claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868
> (2009). Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth." Id. at 1950.
> Third, "whe[n] there are well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly give rise to an
> entitlement for relief." Id. This means that our inquiry is normally broken into
> three parts: (1) identifying the elements of the claim, (2) reviewing the complaint
> to strike conclusory allegations, and then (3) looking at the well-pleaded
> components of the complaint and evaluating whether all of the elements identified
> in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Therefore, the documents from the Nagel Action cited by the parties and the Settlement Agreement may be considered without converting the motion into a motion for summary judgment.

Nagel contends that: 1) all of Siemen's claims are compulsory counterclaims that should have been filed in the Nagel Action and are now waived; 2) the parol evidence rule bars claims for fraudulent inducement and misrepresentation; 3) Siemens cannot state claims for fraudulent inducement and misrepresentation or breach of the duty of loyalty, which are torts, because of the gist of the action doctrine; and 4) Siemens has failed to plead sufficient facts to state claims for breach of contract or breach of the duty of loyalty.

As noted above, Siemens agrees to withdraw Count II, the claim for fraudulent inducement/misrepresentation. However, it argues that: 1) counterclaims are not compulsory if they have not "matured" at the time a defendant files an answer and in this case the claim did not mature until Nagel's deposition on March 10, 2017, nor do Siemens' claims arise out of the same

6

transaction and occurrence as Nagel's claims in the Nagel Action; 2) the gist of the action doctrine does not bar a claim for breach of the duty of loyalty which is based on a societal fiduciary duty rather than a contractual provision; and 3) it has sufficiently stated claims for breach of contract and breach of the duty of loyalty.

In a reply brief, Nagel argues that: 1) Siemens' claims accrued before it filed its answer in the Nagel Action and it could not have filed them in a supplemental pleading; 2) the breach of contract and breach of the duty of loyalty claims are insufficient; and 3) if Nagel removed confidential information, he must have done so while employed by Siemens and therefore the breach of the duty of loyalty claim is mutually exclusive with the breach of contract claim and the duties violated were contemplated by Nagel's employment documents and thus the gist of the action doctrine does apply to bar the claim.

Compulsory Counterclaims

The Federal Rules of Civil Procedure provide that:

(a) Compulsory Counterclaim.

> (1) In General. A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction….
>
> (b) Permissive Counterclaim. A pleading may state as a counterclaim against an opposing party any claim that is not compulsory….
>
> (e) Counterclaim Maturing or Acquired After Pleading. The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.

Fed.R.Civ.P. 13(a, b, e).

The Court of Appeals has held that:

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." Id. Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties. See id.; Great Lakes Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961). In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 289-90 (3d Cir. 2002) (footnote omitted). In that case, two insurance companies (U.S. Fire and North River) brought suit against Transamerica in Texas. Transamerica then brought suit in New Jersey against International Insurance Co. (IIC), which had assumed the rights and obligations of U.S. Fire and North River, raising the same issues presented in the Texas action. IIC argued that the second action should be barred because Transamerica had failed to raise its claims as compulsory counterclaims in the Texas action. Transamerica argued that Rule 13(a) did not apply because IIC was not a named "opposing party" in the Texas action, but the court held that IIC was equivalent to the named parties therein. Therefore, the court dismissed the second action.

Siemens argues that its claims do not arise out the same transaction or occurrence as Nagel's claims in the Nagel Action because Nagel's claims are predicated upon the interpretation of his Employment Agreement, his employment with Siemens from May 9, 2012 to April 3, 2015, and whether he experienced a material diminution in his job duties and responsibilities thereby giving him "Good Reason" to resign. By contrast, Siemens notes that its claims against

8

Nagel in this case arise from the separately negotiated Settlement Agreement and his obligations thereunder.

Nagel responds that, when Siemens filed this case, it explicitly related it to the Nagel Action on the Civil Cover sheet, which explains that actions are related when a case "involves the same issues of fact or it grows out of the same transactions as another suit…." (Nagel Action ECF No. 1-1 at 1-2.) As noted above, "the relevant inquiry is whether the counterclaim bears a logical relationship to an opposing party's claim." Transamerica, 292 F.3d at 389. A case that is designated as "related" to another case also meets the test for a compulsory counterclaim.

However, as the Rule states, a claim must be in existence "at the time of service" of the answer. That is, "Rule 13(a) applies to counterclaims that have 'matured at the time' the defendant serves his pleadings." Union Corp. v. Brown, 1988 WL 31080, at *2 (E.D. Pa. Mar. 29, 1988) (citations omitted). Siemens contends that its counterclaims did not exist at the time it filed its answer in the Nagel Action (December 23, 2015) and that they "matured" on March 10, 2017 based on Nagel's statements during his deposition. Nagel responds that Siemens was aware of these facts before it filed its answer in the Nagel Action.

Nagel contends that the Union Corp. case never ruled on whether the claim had matured, because the parties did not adequately brief the issue. However, the two cases that it cited did make this determination. In Stahl v. Ohio River Co., 424 F.2d 52 (3d Cir. 1970), the court held that a claim for contribution "is not a matured claim as contemplated under Rule 13(e) because such claim is contingent upon a verdict and judgment establishing liability of a party as a joint tortfeasor." Id. at 55 (footnote omitted). And in Steinberg v. St. Paul Mercury Insurance Co., 108 F.R.D. 355 (S.D. Ga. 1985), the court held that claims on an assignment of a security deed and promissory note did not mature until the assignment was executed: "The fact that the insurer

9

might have known that eventually it would have this counterclaim against Steinberg does not affect the determination of the time at which this counterclaim matured for the purposes of Fed.R.Civ.P. 13(a)." Id. at 358-59.

Nagel cites case law holding that:

> Under Rule 13(e), leave is not proper if claims were ripe prior to the filing of the answer. Furthermore, "Rule 13 must be read in conjunction with Rule 15 of the Federal Rules of Civil Procedure." Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., No. 88 Civ. 3931, 1991 WL 10931, at *1 (E.D.N.Y. Jan. 24, 1991); Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc., 99 Civ. 4677, 2001 WL 1702151 (S.D.N.Y. Jan. 11, 2002). Rule 15(d), which specifically deals with supplemental pleadings, only permits a "party to serve a supplemental pleading setting forth *transactions or occurrences or events which have happened since the date* of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d) (emphasis added).

Bergquist v. Aetna US Healthcare, 289 F. Supp. 2d 400, 414-15 (S.D.N.Y. 2003). In that case, the court held that Aetna was on notice of a claim two months prior to the date it moved to amend its answer to assert a counterclaim. Therefore, it could not assert the counterclaim pursuant to Rule 13(e). Nevertheless, the court allowed Aetna to amend its answer pursuant to Rule 13(f).[2]

Nagel points out that, on August 15, 2016, Siemens requested leave of Court to file an Amended Answer to Nagel's Complaint in the Nagel Action based upon the affirmative defense of after-acquired evidence and that it relied upon the same facts it now cites as the basis for its claims in this case. Siemens responds that it did not learn until July 22, 2016 that Nagel was in possession of electronic devices containing, inter alia, over 30,00 emails and other documents belonging to Siemens and that it was not until Nagel's deposition on March 10, 2017 that Nagel confirmed that the documents he possessed included confidential information, thereby violating

---

[2] Rule 13(f) was deleted in 2009 as largely redundant and potentially misleading. The note to this Rule indicates that amendments to assert counterclaims are governed by Rule 15.

the Settlement Agreement.

In his reply brief, Nagel cites the fact that the August 19, 2016 motion to compel explicitly stated that Siemens had "confirm[ed] that confidential information was taken." (Nagel Action, ECF No. 29 at 2.) Moreover, the Statement of Material Facts filed with the motion stated that:

> Given the nature of [Nagel's] former position, and because of the extraordinary amount of electronic data/information misappropriated from Siemens, it is virtually certain that [Nagel] and his counsel are in possession of confidential, proprietary and/or privileged information. (As described in paragraphs 34 and 39, below, it is evident that they are in fact in possession of at least two confidential documents taken from Siemens, which [Nagel] used as exhibits at recent depositions.)
>
> Accordingly, on August 1, 2016, Siemens requested that [Nagel] and his counsel immediately return the flash drives containing Siemens' property.
>
> Significantly, Siemens also explained the [Nagel's] conduct in downloading and retaining Siemens' property directly related to [Siemens'] defenses in this case…
>
> Thus, by August 1, 2016, [Nagel] was clearly on notice that:
>
> a. [Nagel] was in possession of an extraordinary amount of Siemens' property that, due to Nagel's position as General Manager, likely contained Siemens' proprietary, confidential, and/or privileged information;
>
> b. [Nagel's] possession of Siemens' property was unauthorized…
>
> c. [Nagel's] conduct in downloading and taking Siemens' property, and the flash drives which may evidence this conduct, were important to [Siemens'] affirmative defenses (as was as to a possible counterclaim)...

(Nagel Action, ECF No. 30 ¶¶ 25-28.)

Nagel argues that Siemens' claims "matured" on the date his alleged acts took place, that is, while he was still employed by Siemens, and that Rules 13(e) and 15(d) only permit parties to supplement their pleadings with claims arising out of transactions or occurrences that have transpired since the date of the pleading sought to be supplemented. Therefore, he contends that

11

Siemens could not have used Rules 13(e) or 15(d) to supplement its answer in the Nagel Action to assert a counterclaim. However, Siemens is not attempting to file a counterclaim in the Nagel Action pursuant to Rules 13(e) and 15(d) and thus Nagel's citations are inapposite.

The facts are disputed as to when Siemens acquired sufficient information to assert that Nagel breached the Settlement Agreement by retaining confidential Siemens information. Construing the facts in Siemens' favor as the non-moving party, it did not learn until March 10, 2017 that Nagel had breached the Settlement Agreement. The fact that Siemens asserted on August 19, 2016 that Nagel "likely" had Siemens' confidential information in his possession is not equivalent to the information acquired by Siemens on March 10, 2017 during Nagel's deposition, namely that he actually admitted possessing such information. In any event, Siemens' claims were not "mature" at the time it filed an answer in the Nagel Action (December 23, 2015), which is what Nagel is asserting herein. Its claims are thus not compulsory counterclaims that would be waived because it did not file them in the Nagel Action.

Moreover, Nagel has omitted the fact that case law holds that: "Failure to assert a compulsory counterclaim *before the related action proceeds to judgment* results in the barring of the counterclaim." James E. McFadden, Inc. v. Bechtel Power Corp., 1986 WL 4195, at *3 (E.D. Pa. Apr. 3, 1986) (emphasis added) (citing Bristol Farmers Market & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1220 (3d Cir. 1978)). The Nagel Action has not proceeded to judgment.

In addition, dismissal is not necessarily the appropriate remedy in any event. The Transamerica case involved suits in two different courts. By contrast, in a case in which the second suit had been transferred to the same court as the first one, a court stated that:

> Here, judicial economy would be best served by consolidating the
> California Action with the Pennsylvania Action. See Wells v. Rockefeller, 728

F.2d 209, 214 (3d Cir. 1984) (noting that when a claim assertable as a compulsory counterclaim in another action is brought in the same court as that other action, both actions can be consolidated); 6 Charles Alan Wright et al., Federal Practice & Procedure § 1418 (3d ed. 2007) ("Of course, if both actions are pending before the same federal court, they can be consolidated in whatever manner is most convenient for the purpose of trial.")

Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 524 (E.D. Pa. 2012). See also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC, 208 F.R.D. 59, 63 (S.D.N.Y. 2002) ("the filing of a separate action in lieu of a compulsory counterclaim … is not a violation of Rule 13(a), F.R. Civ. P." and the procedural devices of transfer, stay and consolidation can be used to avoid multiple litigation and effectuate the Rule.)

Siemens is not attempting to add a compulsory counterclaim to the Nagel Action using Rule 13(e) or Rule 15(d). Therefore, the Court will deny Defendant's motion based on the compulsory counterclaim argument and will defer the decision on whether to consolidate the remaining claims in this case with the Nagel Action. The next issue to be determined is whether the claims otherwise survive a motion to dismiss.

Determining State Law

The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996). Because this is a diversity

action, the Court must predict how the Pennsylvania Supreme Court[3] would rule if presented with this situation. Whether a doctrine applies in this case is an issue of law to be resolved by the court. Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

Count I: Breach of Contract

In Count I, Siemens alleges that Nagel breached the Settlement Agreement by removing and retaining confidential information belonging to Siemens, despite express terms prohibiting him from doing so. Siemens alleges that this breach has deprived it of the benefit of the bargain and has caused it damages, including but not limited to the $950,000 consideration payment made to Nagel and costs associated with the Forensic Protocol.

Nagel argues that Siemens fails to state a claim for breach of contract. To state such a claim, a plaintiff must allege: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." Alpart v. General Land Partners, Inc., 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

In this case, Siemens has alleged that: Nagel signed a Settlement Agreement, in which he promised not to retain confidential Siemens documents; that Nagel breached this duty by retaining such documents (and even admitted to doing so at his deposition); and that it has been damaged by this breach. These allegations are more than sufficient to state a claim for breach of contract. Therefore, with respect to Count I, the motion to dismiss will be denied.

Count III: Breach of the Duty of Loyalty

In Count III, Siemens alleges that Nagel breached his common law duty of loyalty to

---

[3] The parties both cite Pennsylvania law in support of their positions. Moreover, the Settlement Agreement states that it shall be governed by Pennsylvania law. (Am. Compl. Ex. A ¶ 12.)

14

Siemens by copying and/or downloading Siemens' confidential, privileged and/or proprietary information without authorization and for his personal benefit. Nagel argues that claim is barred by the gist of the action doctrine, and that Siemens fails to sufficiently state a claim. Siemens responds that the gist of the action doctrine does not apply to this situation and that it has sufficiently stated a claim for relief. In a reply brief, Nagel argues that Siemens confirms that any alleged breach occurred during his employment and arises out of employment agreements.

Gist of the Action Doctrine

In 2014, the Pennsylvania Supreme Court issued a decision which discusses the gist of the action doctrine at length. The court stated that:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions. We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint.

Bruno v. Erie Ins. Co., 106 A.3d 48, 68-69 (Pa. 2014) (footnotes and citations omitted). In Bruno, the plaintiff homeowners sued their insurer (Erie) after its adjuster and engineer came to their home to investigate black mold the Brunos found in their basement and told the Brunos that

the mold was harmless, that it had no health consequences and that they should continue to tear out the paneling in their basement. The Brunos followed this advice, but suffered health problems from mold exposure and eventually the house became uninhabitable such that it had to be destroyed. Erie paid the Brunos $5,000, as owed under the insurance policy for testing and attempted remediation of the mold.

The court held that:

> Accordingly, while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort. We, therefore, reverse the order of the Superior Court affirming the trial court's dismissal of the Brunos' negligence claim on the basis of its application of the gist of the action doctrine.

Id. at 71 (footnote omitted).

Nagel argues that any duty of loyalty that he allegedly owed to Siemens would have been based on his employment agreement and thus is barred by the gist of the action doctrine. Siemens responds that the duty of loyalty is a societal duty governed by the law of torts.

As one court recently summarized it:

> "A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 499 (E.D. Pa. 2008). The cases that evaluate whether breach of fiduciary duty claims are barred by the gist of the action doctrine can be grouped generally into two categories. Certainteed Ceilings Corp. v. Aiken, No. 14-3925, 2015 WL 410029, at *9 (E.D. Pa. Jan. 29, 2015). "First, ... claims for breach of fiduciary duty are not barred if the fiduciary duty at issue goes 'beyond the particular obligations contained in' the parties' contract."

16

Id. citing Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001); Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 779 (M.D. Pa. 2008); Orthovita, Inc. v. Erbe, No. 07-2395, 2008 WL 423446, at *7-8 (E.D. Pa. Feb. 14, 2008); Murphy v. Mid E. Oil Co., No. 06-1343, 2007 WL 527715, at *6-7 (W.D. Pa. Feb. 14, 2007). "Second, ... breach of fiduciary duty claims are barred by the gist of the action doctrine if there are 'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of' the parties' contractual agreements." Certainteed Ceilings, 2015 WL 410029, at *9, citing Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010); Cunningham Lindsey U.S., Inc. v. Bonnani, No. 13-2528, 2014 WL 1612632, at *7 (M.D. Pa. Apr. 22, 2014); Hill v. Best Med. Int'l, Inc., No. 07-1709, 2011 WL 5082208, at *31 (W.D. Pa. Oct. 25, 2011); AMG Nat'l Trust Bank v. Ries, No. 06-4337, 2011 WL 6840586, at *5 (E.D. Pa. Dec. 29, 2011). The courts agree that dismissals under the gist of the action doctrine should take care not to preclude a party's right to plead claims in the alternative, USG Ins. Services, Inc. v. Bacon, No. 16-01024, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016).

DePuy Synthes Sales, Inc. v. Globus Med., Inc., No. CV 17-1068, 2017 WL 1493365, at *6 (E.D. Pa. Apr. 26, 2017). The court concluded that that the breach of fiduciary claim was barred by the gist of the action doctrine for two reasons: 1) the acts which formed the basis of the breach of fiduciary duty/breach of loyalty claim were the identical acts forming the breach of contract action; and 2) the complaint did not allege that the Sales Consultants' positions with their employer gave rise to fiduciary duties separate and apart from the obligations under the contracts. Id. at *7-8.

Similarly, in this case, the Amended Complaint explicitly states that Nagel breached his duty of loyalty by retaining confidential Siemens information, which is precisely the basis for the breach of contract claim in Count I.[4] Moreover, the Amended Complaint does not allege that Nagel's position with Siemens gave rise to fiduciary duties separate and apart from his obligations under the Settlement Agreement. Nagel also notes that any obligations stemming from his employment were governed by the confidentiality and non-disclosure agreements and

---

[4] The Amended Complaint describes it as a "common law duty of loyalty," but the Court is not bound by the labels parties use. Bruno, 106 A.3d at 68.

17

other policies referred to and incorporated into his Employment Agreement. (Nagel Action ECF No. 1-3 at 86.) Therefore, the breach of the duty of loyalty claim merely reiterates the breach of contract claim and is barred by the gist of the action doctrine.

For these reasons, the motion to dismiss will be granted with respect to Counts II and III of the Amended Complaint and denied with respect to Count I.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIEMENS INDUSTRY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 17-405 |
| | ) | |
| HARRY C. NAGEL, | ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

ORDER

AND NOW, this 15th day of September, 2017,

IT IS HEREBY ORDERED that the motion to dismiss filed by the Defendant (ECF No. 12) is granted with respect to Counts II and III of the Amended Complaint and denied with respect to Count I.

                                            s/Robert C. Mitchell_____
                                            ROBERT C. MITCHELL
                                            United States Magistrate Judge